UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Debbie Morrow and Tina King,

                         Plaintiffs,

                                                  Civ. No. 11-104 (RHK/LIB)
                                                  **MEMORANDUM OPINION**
                                                  **AND ORDER**

v.

Weinerman & Associates, LLC, and
Dan Steinberg,

                         Defendants.

Thomas J. Lyons, Lyons Law Firm, P.A., Vadnais Heights, Minnesota, for Plaintiffs.

William G. Cottrell, Cottrell Law Firm PA, Mendota Heights, Minnesota, for Defendants.

## INTRODUCTION

In this action, Plaintiffs Debbie Morrow and Tina King, Morrow's adult daughter, assert that Defendants Weinerman & Associates LLC ("Weinerman") and its agent, Dan Steinberg,[1] violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, in their attempts to collect a debt Morrow allegedly owed. Plaintiffs have moved for partial summary judgment as to Weinerman's liability on their FDCPA claims.[2] For the reasons set forth below, the Court will grant the Motion in part and deny it in part.

---

[1] Steinberg's real name is Darin Meyer, but he used the "registered alias" Dan Steinberg in his work as a collection agent. (See Mem. in Opp'n at 1; Roy Aff. Ex. A, ¶ 1.)

[2] The Motion does not purport to seek partial summary judgment as to Steinberg. (See Doc. Nos. 12, 14.) Thus, the Court will not address Steinberg's individual liability or the question (raised by counsel for the first time at oral argument) whether he was properly served.

**BACKGROUND**

The relevant facts are largely undisputed. Weinerman is a debt-collection firm. Morrow allegedly owed money for purchases on a credit card issued to her by HSBC/Orchard Bank. (See Roy Aff. Ex. E, letter to Morrow dated July 14, 2009.) Sometime prior to July 14, 2009, HSBC/Orchard Bank sold or assigned Morrow's debt to Weinerman for collection; at the time, she purportedly owed about $846. (See id.) In the course of Weinerman's collection attempts, Steinberg, a collection agent employed by Weinerman, made numerous telephone calls to Morrow. Three of those calls are at the heart of the instant dispute, and audio recordings of the calls reveal the following:

First phone call on February 3:

Steinberg first called Morrow on February 3, 2010. King was with her mother at the time, and she answered the call. The caller identified himself as Dan Steinberg and said he was with Weinerman & Associates, and when King asked what type of firm that was, he replied it was a "loss mitigation firm." He also said he needed Morrow's permission to discuss "the case" with King, so Morrow gave Steinberg permission to speak to her daughter, and King then came back on the line. She told Steinberg never to call her mother's number again and said, "if you have a pen and paper, I'd like to give you her attorney's information." In response, Steinberg began to question King, speaking over her and repeatedly asking what the attorney was handling, why he should take the attorney's information, and why he should call the attorney. King became flustered, and Steinberg told her to "act like an adult" and "lose the attitude." He finally said, "I'll be calling you back here," and "I'll talk to you tomorrow," and the call ended.

Plaintiffs' return call:

After this call, King called Steinberg back. She told him she had just been trying to give Steinberg her mother's information and she "did not appreciate [his] rudeness." She also said it would be "a violation" for Steinberg to continue calling Morrow. Steinberg then interrupted King, saying, "ma'am, you don't even know what you're talking about." King became angry and called Steinberg an "asshole," and Morrow then came on the line. Steinberg asked, "Debbie, what's going on here?" and said he was calling about her HSBC/Orchard Bank MasterCard account. Morrow stated multiple times, "you can call my lawyer." She also tried to give him the attorney's information, saying "my lawyer's name --," but Steinberg cut in before she could finish, asking, "Why am I calling your attorney?" and "What is your attorney for?" When Morrow began to reply to his questions, Steinberg again interrupted, snidely asking, "Is [the attorney] paying the bill for you?" Seconds later, the phone call ended.

Plaintiffs' second return call:

King then called Steinberg once more. After confirming that he was the person she had spoken to previously, she immediately said, "O.K., attorney Amy Swedberg," and she began to spell Swedberg's last name. Steinberg interrupted as King was spelling the name. He said, "What am I calling the attorney for, are they paying the bill for her? There's no reason to call the attorney." At this point, King replied, "I will call Amy and have her call you. Goodbye." These three calls took place in succession on February 3.

Amy Swedberg represented Morrow on a pro bono basis through the Volunteer Lawyers Network at the time of the phone calls. On February 11, 2010, she faxed a letter

3

to Weinerman informing it that she represented Morrow regarding her debts.  (Swedberg Aff. Ex. A, at 3.)  The letter provided:

> Because I am Ms. Morrow's attorney, under the Federal Fair Debt Collection Practices Act, 15 U.S.C. §1692c, *et seq.* ("FDCPA"), you must direct all your communications to me.  **Please do not contact Ms. Morrow either in writing or by telephone at any time or you will be in violation of the FDCPA.**  Please call or write me, rather than Ms. Morrow, if you would like to discuss this or if you have any questions.

(Id. (emphases in original).)  A confirmation of fax delivery shows successful transmission of the fax to Weinerman at 11:52 a.m. on February 11, 2010.  Both the letter and the fax cover page included Swedberg's name and contact information.

For its part, Weinerman asserts that it has "no record of receiving this facsimile" from Swedberg, nor does it have a record of "any communication with a lawyer" regarding Morrow's debt.  (Renteria Aff. ¶ 6.)  Its collectors are "trained to have no further communication" with a debtor "[o]nce a lawyer has been retained."  (Id. ¶ 3.)  However, Weinerman also takes the position that "[m]any debtors whom we call will pretend to have a lawyer, but when we ask them for the name and phone number of the attorney, they do not provide it or say they will be retaining an attorney, which is why *we require a written communication* from the debtor or from their attorney before we cease communications."  (Id. ¶ 5 (emphasis added).)  Weinerman claims that had it received Swedberg's letter, it "would have contacted [her]" rather than Morrow.  (Id. ¶ 7.)

Entries in Weinerman's collection log and summary of calls show numerous phone calls to Morrow between February and August 2010.  Some entries are labeled "outgoing calls," while others indicate "DLR dialer called debtor."  The log shows

4

twenty-two calls after February 3, and seventeen of these calls list Steinberg as the collector involved.[3] Most of the calls indicate either that the line was busy or that no message was left. All but three of the twenty-two phone calls were also placed after Swedberg's fax to Weinerman. The last call in the log occurred on August 4, and a note indicates the number had been disconnected.

Plaintiffs commenced the instant action in January 2011, alleging that Weinerman and Steinberg violated the FDCPA. They now seek partial summary judgment as to Weinerman's liability. The Motion has been briefed,[4] a hearing was held on September 21, 2011, and the matter is now ripe for decision.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Whisenhunt v. Sw. Bell Tel., 573 F.3d 565, 568 (8th Cir. 2009). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party.

---

[3] The log identifies the agent involved by a code comprised of the first three letters of his or her first name. (See Roy Aff. Ex. E.) The entries for these calls all list the initial code "DAR," indicating Steinberg's real name, Darin Meyer. (See id.) Specifically, calls were placed on the following dates: February 4, 8, 11, 17, 18, 24, 25, 27, March 3, 8, 10, 15, 18, 20, 26, 27, 31, July 15, 20, 21, 28, and August 4. (See Roy Aff. Ex. E.)

[4] As Plaintiffs have correctly noted, Defendants' opposition brief was improperly formatted and submitted late, thus failing to comply with Local Rule 7.1. See D. Minn. LR 7.1(d), (f). The Court has nevertheless considered Defendants' memorandum, and it trusts counsel will be more mindful of these Rules in the future.

Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009); Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078-79 (8th Cir. 2008).

## ANALYSIS

### I. The FDCPA generally

The FDCPA was enacted to protect consumers from abusive debt-collection practices. In the instant case, Plaintiffs assert that Weinerman violated two sections of the Act by continuing to repeatedly call them after learning that Morrow had an attorney, and by making harassing or abusive statements. First, § 1692c(a)(2) of the FDCPA provides that a debt collector may not "communicate with a consumer in connection with the collection of any debt" without the consumer's consent:

> if the debt collector *knows the consumer is represented by an attorney* with respect to such debt and has knowledge of, or *can readily ascertain*, such attorney's name and address.

15 U.S.C. § 1692c(a)(2) (emphases added). Second, § 1692d provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> \* \* \*
>
> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

6

> \* \* \*
>
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with the intent to annoy, abuse, or harass any person at the called number.

15 U.S.C. § 1692d(2), (5).

## II.   The statute applied here[5]

### a.  Section 1692c(a)(2)

Plaintiffs first argue that Weinerman violated § 1692c(a)(2) of the FDCPA as a matter of law with respect to Morrow by continuing to call her after learning she was represented by counsel. In the Court's view, Weinerman failed to comply with this provision as a matter of law, and summary judgment is appropriate.

Weinerman argues it cannot be liable because it did not receive Swedberg's fax or any written communication requesting that it cease contact with Morrow, nor was it ever contacted by an attorney. In fact, it concedes that its stated practice is to <u>not</u> cease communications with a consumer who says she is represented by counsel until it receives written notice or is contacted by the attorney. (<u>See</u> Renteria Aff. ¶ 5 ("[W]e require a written communication from the debtor or a phone call or letter from [his or her] attorney before we cease communications.").) Yet this position finds no support in the FDCPA, and it flies in the face of the Act's broad remedial purpose. Section 1692c(a)(2) does not

---

[5] As a threshold matter, the Court notes § 1692d expressly provides that a debt collector may not engage in prohibited conduct with respect to "*any person* in connection with the collection of a debt." 15 U.S.C. § 1692d (emphasis added). Thus, it properly extends to King since she was speaking to Steinberg in connection with his attempts to collect Morrow's debt. Plaintiffs argue Weinerman violated some sections of the FDCPA as to Morrow only, some as to King only, and some as to both of them, as specified below.

require notice *in writing* that a consumer is represented by counsel;[6] it simply provides that once a debt collector learns a consumer is represented, it must cease communicating directly with her. Accord Goins v. JBC & Assocs., P.C., 352 F. Supp. 2d 262, 272-73 (D. Conn. 2005) (quoting Federal Trade Commission, Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50104 (1988)) ("[I]f a debt collector learns that a consumer is represented by an attorney in connection with the debt, *even if not formally notified of this fact*, the debt collector must contact only the attorney and must not contact the debtor."). Weinerman can identify no support for its position that written notice is required to trigger the protections of § 1692c(a)(2), and the Court will not read such a requirement into the FDCPA where none exists.

Rather than requiring formal notice, § 1692c(a)(2) prohibits communicating directly with a consumer if a debt collector "knows the consumer is represented" and "has knowledge of or can readily ascertain" the attorney's name and address. Despite Weinerman's claims to the contrary, there can be no genuine dispute that it did know Morrow was represented. During the February 3 phone calls, both King and Morrow repeatedly said Morrow had an attorney and asked Steinberg to contact the attorney

---

[6] Weinerman's contention that "[t]he FDCPA requires a written communication to cease communications in order for the debt collector to have to cease communications" (Mem. in Opp'n at 3), although unsupported by any citation, is not wholly incorrect. Another subsection of § 1692c does require notice in writing. 15 U.S.C. § 1692c(c) ("If a consumer notifies a debt collector *in writing* that the consumer refuses to pay the debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt.") (emphasis added). Notably, no similar requirement is found in the provision regarding representation by counsel.

rather than continuing to call Morrow. Thus, regardless whether Weinerman received Swedberg's fax, it had already learned that Morrow was represented on February 3.

It is equally apparent that Weinerman knew or could readily have ascertained the attorney's name and address. During the final phone call on February 3, after Steinberg had repeatedly cut off Plaintiffs' attempts to provide the attorney's name and information in the previous two calls, King succeeded in stating the attorney's name—Amy Swedberg—and began spelling Swedberg's last name before Steinberg interrupted. Hence, Steinberg knew the attorney's name, and her address or other contact information could have been readily ascertained through a simple search. (See Roy Aff. ¶ 7.) Furthermore, even if Plaintiffs had not succeeded in providing the name, Weinerman could have "readily ascertain[ed]" it because Plaintiffs repeatedly offered it, even calling back twice after Steinberg initially interrupted them. King explicitly offered Steinberg the information during the first call when she said, "if you have a pen and paper, I'd like to give you her attorney's information." During the second phone call, Morrow similarly told Steinberg, "my lawyer's name is ---." Although Steinberg interrupted each attempt, Plaintiffs tried to provide the attorney's name and information several times before finally succeeding in giving her name. In short, the information was readily ascertainable simply by listening to Plaintiffs rather than cutting them off. Attempts to avoid receiving the information cannot shield Weinerman from liability.

Finally, relying on a single case from the Kansas Court of Appeals, Weinerman argues that its communications with Morrow after she reported having an attorney were only "de minimas" [sic] violations of the FDCPA. (Mem. in Opp'n at 3.) Yet Clark's

9

Jewelers v. Humble, 823 P.2d 818 (Kan. Ct. App. 1991), the case upon which Weinerman relies, is factually distinct. It involved letters addressed to the consumers but mailed to the office of the consumers' attorney, and the court found these letters technically violated the FDCPA but were only a *de minimis* violation. Cf. Pearce v. Rapid Check Collection, Inc., 738 F. Supp. 334, 337-38 (D.S.C. 1990) (violation characterized as *de minimis* where debt collector sent a single letter to consumer after learning she was represented). Here, Steinberg not only actively tried to avoid Plaintiffs' attempts to provide the attorney's information, but he made numerous phone calls to Morrow after learning that she was represented by counsel. In the Court's view, this conduct is the type proscribed by § 1692c(a)(2) of the FDCPA and is not *de minimis*.

    **b. Section 1692d**

Plaintiffs also argue that both Morrow and King are entitled to summary judgment for Weinerman's violations of § 1692d. Section 1692d prohibits a debt collector from engaging in conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." It also provides examples of violative conduct, including "causing a telephone to ring . . . repeatedly or continuously with the intent to annoy," 15 U.S.C. § 1692d(5), and "us[ing] obscene or profane language or language the natural consequence of which is to abuse the hearer," id. § 1692d(2).[7] Plaintiffs assert that "causing [Morrow's] telephone to ring" repeatedly and the rude statements to them on February 3 had the natural consequence of abusing or harassing and thus violated § 1692d as a matter of law. The Court cannot agree.

---

[7] Plaintiffs assert that Weinerman violated §1692d(2) with respect to King only.

"[W]hether conduct harasses, oppresses, or abuses will [ordinarily] be a question for the jury." Harvey v. Great Seneca Fin. Corp., 453 F.3d 324, 330 (6th Cir. 2006) (quoting Jeter v. Credit Bureau, 760 F.2d 1168, 1179 (11th Cir. 1985)). Courts have deemed it a question of fact whether a given number of phone calls and the pattern of those calls (i.e., frequency, time of day, etc.) violates § 1692d. E.g., Strom v. Nat'l Enter. Sys., Inc., No. 09-72A(F), 2011 WL 1233118, at *9 (W.D.N.Y. Mar. 30, 2011) (citing Akalwadi v. Risk Mgmt. Alternatives, Inc., 336 F. Supp. 2d 492, 506 (D. Md. 2004)) ("[W]hether the amount of calls constitutes harassment under § 1692d(5) is a question for the jury."); Joseph v. J.J. Mac Intyre Cos., L.L.C., 238 F. Supp. 2d 1158, 1168 (N.D. Cal. 2002) (same). Similarly, whether a consumer would find a debt collector's communications harassing, oppressive, or abusive is also a fact issue. E.g., Neill v. Bullseye Collection Agency, Civ. No. 08-5800, 2009 WL 1386155, at *2 (D. Minn. May 14, 2009) (Ericksen, J.) (citations omitted). Although courts routinely do (and should) "structure the confines of § 1692d" by disposing of claims as a matter of law where the facts show no conduct having the natural consequence of harassing or abusing a debtor, see Harvey, 453 F.3d at 330 (citations omitted), the facts here are not so egregious that the Court can determine at this juncture that Weinerman violated of § 1692d as a matter of law. Rather, the Court determines that whether the frequency and number of phone calls or Steinberg's comments to Morrow rose to the level of prohibited abuse or harassment should be determined by a jury.

11

**CONCLUSION**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Plaintiffs' Motion for Partial Summary Judgment as to Defendant's Liability for Violations of the FDCPA (Doc. No. 12) is **GRANTED IN PART** and **DENIED IN PART** as follows: (1) the Motion is **GRANTED** with respect to claims under 15 U.S.C. § 1692c(a)(2), and Defendant is liable as a matter of law for violating that section; and (2) the Motion is **DENIED** with respect to claims under 15 U.S.C. § 1692d.

Dated: September 26, 2011                s/Richard H. Kyle
                                         RICHARD H. KYLE
                                         United States District Judge